UNITED STATES of America,
Plaintiff–Appellee,

v.

Clement A. ABADIE, Jr., and Raymond
J. Palazzolo, Defendants–Appellants.

No. 88–4260.

United States Court of Appeals,
Fifth Circuit.

July 28, 1989.

Rehearing Denied Sept. 7, 1989.

Russell D. Thompson, Ocean Springs, Miss. (court appointed), for Abadie.

Henry P. Pate, III, Pascagoula, Miss. (court appointed), for Palazzolo.

Peter H. Barrett, Asst. U.S. Atty., Biloxi, Miss., George Phillips, Jackson, Miss., for plaintiff-appellee.

Before CLARK, Chief Judge, RUBIN and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Appellants Clement A. Abadie, Jr. and Raymond J. Palazzolo appeal their convictions on three counts: (1) conspiracy to possess cocaine with intent to distribute; (2) possession of cocaine with intent to distribute; and (3) traveling in interstate commerce to promote drug trafficking. We affirm.

## I.

In the spring of 1987, the Drug Enforcement Agency (DEA) established an undercover narcotics operation at a service station in Bay St. Louis, Mississippi. The station was owned by David Scafidi, a confidential informant who was cooperating with the DEA. In April, Scafidi and DEA agent John Chase posed as drug buyers and met with Charles Hurstius, a suspected cocaine seller. Chase showed Hurstius $30,000 in cash to fund the purchase of cocaine; Hurstius agreed to supply the drugs.

On August 27, 1987, DEA agents observed a meeting between Scafidi, Hurstius and defendant Clement Abadie at the service station. The agents saw Abadie walk from the station to his car, remove a paper bag from the car, and return to the station. Moments later Abadie and Hurstius drove away in separate cars. Scafidi told agent Chase later that nothing was in the paper bag and that Abadie was merely conducting a "dry run" to flush out any police who might be watching the service station.

On September 4, agents went to the service station after Scafidi told them that drugs would be delivered that afternoon. Scafidi told Agent Terry Cooper that one man named Ray and another named Abadie had shown him two bricks of cocaine. Scafidi said he saw the cocaine while he and the other two men were sitting in a late 1970s model white Chevrolet station wagon located in a parking lot near his service station; according to Scafidi the cocaine was in a grey gym bag located on the front seat of the car. Scafidi described Ray as being 6'3" tall with a mustache and wearing a T-shirt. Scafidi told Cooper that Ray was waiting at a local fast food restaurant but that arrangements had been made to transfer the cocaine at the Buccaneer Lounge, located about a mile and a half west of the restaurant.

Based on this information the agents began a surveillance of the restaurant. They observed a white station wagon in the parking lot and a man in the restaurant; both fit the descriptions provided by Scafidi. The man, later identified as defendant Raymond Palazzolo, used a pay telephone outside the restaurant. Palazzolo was accompanied by two other men, later identified as defendants David Venable and Charles Fourroux. The agents concluded that Venable and Fourroux were conducting counter-surveillance activity. After Pa-

lazzolo had a brief discussion with Venable and Fourroux, he drove the white station wagon west on Highway 90 toward the Buccaneer Lounge. Venable and Fourroux followed in a Chevrolet Blazer. After the vehicles had traveled about one-half mile, agents Chase and Cooper stopped Palazzolo and placed him under arrest. Agent Chase then removed a grey gym bag from the front seat of the station wagon. Chase unzipped the bag and found two bricks of cocaine inside.

Later that afternoon, agents observed Abadie in Bay St. Louis using a pay telephone at a service station across the street from Scafidi's station. After Abadie completed his call, the agents followed him to a grocery store where he made another phone call. After the call, agents followed Abadie to Interstate 10 where he was last seen traveling west towards Louisiana. Two months later, authorities arrested Abadie at his home in Slidell, Louisiana, after the grand jury handed down this indictment.

All four defendants were charged with: (Count 1) conspiracy to possess cocaine, 21 U.S.C. § 846; (Count 2) possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1); and (Count 3) interstate travel to promote unlawful activities, 18 U.S.C. § 1952(a)(3). In a joint trial, a jury convicted Palazzolo and Abadie on all three counts. Venable and Fourroux were convicted only on Count 2; they have not appealed. The court sentenced Palazzolo and Abadie to concurrent ten and twelve year sentences, respectively, on Counts 1 and 2, and five years probation and 300 hours of community service on Count 3.

We now consider appellants' challenges to their convictions.

## II.

■ Appellants first contend the district court erred in determining that the officers had probable cause to arrest and search Palazzolo and in denying his motion to suppress the cocaine the agents recovered from the station wagon.

Probable cause "exists when the facts and circumstances within the knowledge of the arresting officer are sufficient to cause a person of reasonable caution to believe that an offense has or is being committed." *United States v. Antone*, 753 F.2d 1301, 1304 (5th Cir.), cert. denied, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985). An officer can rely on any information he reasonably believes is reliable to reach his conclusion. If the "totality of the circumstances" points toward the accuracy of information furnished by an informant the officer can use that information in deciding whether probable cause for an arrest exists. See *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). This includes hearsay evidence the officer reasonably believes to be reliable. *See United States v. Hernandez*, 825 F.2d 846, 850–51 (5th Cir.1987), cert. denied, —— U.S. ——, 108 S.Ct. 1032, 98 L.Ed.2d 996 (1988).

Based on the record made at the suppression hearing, including the testimony of agent Cooper and Palazzolo, we are persuaded that the agents had probable cause to believe an offense was being committed. Scafidi gave the agents a detailed description of how the drug transaction would be handled. He reported that Abadie and Ray showed him the cocaine in a grey gym bag. The details Scafidi provided included a description of the color, make and age of the vehicle where the meeting occurred along with the location of the vehicle and a description of Palazzolo and where he could be located. The officers' personal observations confirmed some of the information Scafidi gave them. They observed both the described car, and a man who met the description Scafidi provided at the restaurant where Scafidi said they could be found. The officers saw the described suspect talking with two men who appeared to be lookouts. The agents then saw the suspect leave the parking lot of the restaurant in the described vehicle; the lookouts followed the station wagon in a manner that caused the agents to believe that they were engaged in counter surveillance. Both vehicles proceeded toward the place where Scafidi told the agents the actual transaction was to occur. The district court was

entitled to conclude that the agents had probable cause to arrest Palazzolo.

■ Additionally, the search of the gym bag following Palazzolo's arrest was not unreasonable. A warrantless search of an automobile is permissible where officers have probable cause to believe that the vehicle contains contraband. *United States v. Prati*, 861 F.2d 82 (5th Cir.1988). If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *United States v. De Los Santos*, 810 F.2d 1326, 1337–38 (5th Cir.1987) (warrantless search of paper bag in car was reasonable); *Prati*, 861 F.2d 82 (warrantless search of defendant's briefcase found in defendant's car was reasonable).

The district court did not err in denying Palazzolo's motion to suppress the cocaine.[1]

### III.

■ Appellants contend next that the district court committed error in admitting hearsay evidence regarding their involvement in the drug scheme. Scafidi did not testify. The defendants complain of agents Chase and Cooper's testimony recounting information Scafidi provided them.

During the hearing on Palazzolo's motion to suppress the cocaine seized when he was arrested, Palazzolo objected to Cooper's testimony about what Scafidi told Cooper about a planned cocaine sale. The trial court properly overruled this objection. The officer was entitled to disclose to the court the information Scafidi furnished him to explain why he had probable cause to arrest Palazzolo. *See Hernandez*, 825 F.2d at 850–51.

■ At trial, Abadie objected to the government's attempts to introduce Scafidi's statements through the testimony of the DEA agents. Appellant's counsel objected at least four times on hearsay grounds to the agents' testimony regarding Scafidi's statements. First, Abadie objected to agent Chase's testimony that Scafidi told him Abadie was conducting a "dry run" during the August 27 meeting. This objection was properly sustained. The court also properly sustained a hearsay objection to a question seeking testimony from agent Cooper that, according to Scafidi, Abadie telephoned Scafidi about two hours after Palazzolo's arrest.

■ The court overruled two objections predicated on hearsay. The prosecutor asked Cooper if Scafidi told him with whom Scafidi had talked about arranging the cocaine sale. Cooper was allowed to testify over objection that Scafidi told Cooper that Scafidi had such a conversation with Abadie. Cooper was also asked if Scafidi told him who Abadie said would deliver the cocaine. Cooper was allowed to testify over objection that Abadie told Scafidi that Ray and Charles Lombardino would deliver the cocaine. This testimony was hearsay; the court erred in overruling these objections.

■ This evidence was not so prejudicial to appellants' defense, however, to require reversal because it was largely cumulative to much more damaging evidence of the same criminal activity; this evidence, which was presented in two segments of the testimony of agent Cooper, is clearly hearsay but was admitted without objection. The first was agent Cooper's testimony recounting Scafidi's statement about the meeting in the white station wagon between Scafidi, Abadie and Palazzolo, where the two defendants showed Scafidi the cocaine.[2] The other item of unobjected to

---

1. Abadie conceded at oral argument that he had no privacy interest in the property searched and thus no standing to complain of the district court's denial of Palazzolo's motion to suppress.

2. Prosecutor: All right. Did you get another call around 12:30 before you could leave and come to Bay St. Louis?

Cooper: Yes, sir. As we were finishing up the planning and making arrangements for the delivery of cocaine that day in Bay St. Louis, right before I left the office, *I got a call from Mr. Scafide* [sic]. *He told me at that time that he had just seen packages of cocaine that were contained in a bag, and it was in a white station wagon, and he had met this individual*

hearsay evidence concerns Cooper's testimony that Scafidi told him that Abadie participated in a dry run to flush out police officers who might be watching.

■ Appellants argue that admission of the testimony regarding Abadie's dry run and the meeting in the station wagon was also error. However, they failed to object to this evidence. If inadmissible evidence is admitted without objection, that admission cannot be the subject of an appeal unless it constitutes plain error. *See United States v. Fendley*, 522 F.2d 181, 186 (5th Cir.1975). But the plain error exception is to be "used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) quoting *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). We are particularly reluctant to brand as plain error, those "errors that might have easily been corrected by objection at trial." *United States v. Brown*, 548 F.2d 1194, 1207–08 (5th Cir.1977). Had the hearsay been excluded, the government could, and surely would, have called Scafidi, who was under subpoena and available to testify. The only reason the government did not need to call Scafidi was because the defendants acquiesced in admitting this hearsay. The appellants have not demonstrated that the district court committed reversible error in its evidentiary rulings.

## IV.

Appellants also challenge the sufficiency of the evidence to support their convictions. We look only to determine whether "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt.... [v]iewing the evidence presented ... and the inferences that may be drawn from it in the light most favorable to the government." *United States v. Bell*, 678 F.2d 547, 549 (5th Cir.1982) (en

banc), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

### A.

■ In order to prove a drug conspiracy, "the government need only demonstrate that an agreement to commit a crime existed, and the defendant knew of, intended to join, and participated in the conspiracy." *United States v. Pozos*, 697 F.2d 1238, 1241 (5th Cir.1983). The conspiracy may be established by either direct or circumstantial evidence. *United States v. Williams–Hendricks*, 805 F.2d 496, 502 (5th Cir.1986).

Agent Chase testified that he and Scafidi met with Hurstius in April 1987 at the service station purportedly to arrange a cocaine purchase. Several months later, the agents photographed a meeting at the station between Hurstius, Abadie and Scafidi. Agent Chase also testified that he observed Abadie conducting what he thought was a dry run to flush out police who might be watching. Scafidi confirmed Chase's suspicions. Abadie and Palazzolo met with Scafidi in the Chevrolet station wagon and showed Scafidi the cocaine and planned the transfer. Palazzolo was arrested with the cocaine in his possession and the cocaine was introduced in evidence.

Other evidence that tends to support the government's case on the conspiracy counts are telephone company records of the calls from Abadie's home in Slidell, Louisiana to Scafidi's Bay St. Louis, Mississippi service station, Hurstius' home and Scafidi's unlisted home number. These telephone calls were numerous and made within five days before Palazzolo's arrest.

The above evidence is sufficient to support appellants' convictions on the conspiracy count.

### B.

■ Palazzolo and Abadie next challenge the sufficiency of the evidence to

*by the name of Ray. And also, he'd also seen Mr. Abadie in Bay St. Louis.* I told him immediately at that time, I said, "If there's anything that develops further on it, put them off, delay

them, so that we can have time to at least arrive over there, do the proper surveillance and make plans." (Emphasis added).

support their convictions for possession with intent to distribute cocaine. . Palazzolo was caught red-handed with two bricks of cocaine that were properly admitted into evidence. Palazzolo and Abadie exhibited the cocaine to Scafidi earlier that day to demonstrate the amount and quality of the cocaine they proposed to sell. Based on this evidence, a jury could reasonably find that Palazzolo and Abadie possessed the cocaine and intended to sell it to Scafidi.

## C.

▉ Abadie and Palazzolo finally challenge the sufficiency of the evidence supporting their convictions for violation of the Travel Act. 18 U.S.C. § 1952(a)(3).

A conviction under 18 U.S.C. § 1952 requires proof of (1) travel in interstate or foreign commerce, (2) specific intent to promote, manage, establish, carry on, or distribute the proceeds of "unlawful activity," and (3) knowing and willful commission of an act in furtherance of that intent after the act of travel. *United States v. Hernandez–Palacios*, 838 F.2d 1346, 1350 (5th Cir.1988).

The government presented evidence that Abadie resided in Slidell, Louisiana. DEA agents saw Abadie arrive at Scafidi's service station in Bay St. Louis, Mississippi, in a car with Louisiana license plates. Abadie was photographed in Bay St. Louis during the dry run meeting with Hurstius and Scafidi on August 27. After the meeting, Abadie drove west from Bay St. Louis, Mississippi, toward his residence in Louisiana. On September 4, the agents again saw Abadie in Bay St. Louis. On that date, agents followed Abadie from Bay St. Louis to Interstate 10, where Scafidi drove west toward Louisiana. The jury could have reasonably inferred from the evidence that Abadie traveled between Louisiana and Mississippi. *See United States v. Williams*, 809 F.2d 1072, 1096 (5th Cir. 1987); *United States v. Puntillo*, 440 F.2d 540, 542 (7th Cir.1971).

Evidence was also ample that Abadie traveled interstate with the intent or purpose of conducting unlawful activity. Intent may be inferred from Abadie's conduct

immediately before and after travel. *United States v. Gooding*, 473 F.2d 425, 427–28 (5th Cir.), *cert. denied*, 412 U.S. 928, 93 S.Ct. 2752, 37 L.Ed.2d 155 (1973). Abadie's dry run was made in Mississippi. His meeting with Scafidi and Palazzolo also occurred in Mississippi. A reasonable jury could infer that a purpose of his trips from Louisiana to Mississippi was to arrange and conduct the drug transaction. *Id.*

▉ Conceding that the record contains no evidence that Palazzolo traveled interstate, the government contends that he aided and abetted Abadie's interstate travel. *See* 18 U.S.C. § 2. Palazzolo argues that his aiding and abetting conviction must be reversed because there is no evidence that he had knowledge of Abadie's interstate travel or that he counseled or induced Abadie to travel. Proof of interstate travel is required as a jurisdictional prerequisite to a conviction under the Travel Act. *United States v. Edelman*, 873 F.2d 791, 794 (5th Cir.1989). The government proceeded against Palazzolo on a theory that he aided and abetted Abadie. Once the government produced adequate proof that Abadie traveled interstate, that proof satisfied the government's burden on this jurisdictional element against Palazzolo. *Id.* To establish Palazzolo's guilt, it was unnecessary for the government to show that Palazzolo induced or even had knowledge of Abadie's interstate travel. *Id; see also United States v. Sigalow*, 812 F.2d 783, 785 (2d Cir.1987).

## V.

Appellants next contend that the government violated its duty under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963), by failing to reveal Scafidi's criminal record. That record would have disclosed that Scafidi had been indicted in Mississippi on various state criminal charges.

▉ Under *Brady*, a defendant is entitled to disclosure of information that might be used to impeach government witnesses. *See United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.

2d 481 (1985); *United States v. Shaffer,* 789 F.2d 682, 687–89 (9th Cir.1986). Although Scafidi did not testify, appellants argue that they were nevertheless entitled to this information to impeach Scafidi as a hearsay declarant. Fed.R.Evid. 806 provides that when a hearsay statement has been admitted into evidence, the credibility of the declarant may be attacked as if the declarant had testified as a witness. *See United States v. Newman,* 849 F.2d 156, 163 (5th Cir.1988).

Assuming without deciding that *Brady* requires the government to turn over impeaching material in this situation, the withholding of impeachment evidence does not require automatic reversal. *United States v. Bagley,* 473 U.S. 667, 676–77, 105 S.Ct. 3375, 3380–81, 87 L.Ed.2d 481 (1985). Only when omitted information is deemed material can a defendant successfully claim a *Brady* violation. *Porretto v. Stalder,* 834 F.2d 461, 464 (5th Cir.1987). Omitted information is material if "its suppression undermines confidence in the outcome of the trial." *Bagley,* 473 U.S. at 678, 105 S.Ct. at 3381. Because appellants fail to show how they would have been able to use Scafidi's record of arrests and indictments at the trial, they have failed to demonstrate the materiality of the withheld information.

 Initially, it is clear that Scafidi's record of arrests and indictments would not have been admissible for impeachment purposes under Fed.R.Evid. 609 because none of the arrests or indictments resulted in a conviction. Further, inquiry into the mere existence of an arrest or indictment is not admissible to impeach the defendant's credibility under Fed.R.Evid. 608(b).[3] *See Newman,* 849 F.2d 156, 161 (5th Cir.1988); *see also United States v. Labarbera,* 581 F.2d 107, 108–09 (5th Cir.1978); *United States v. Garcia,* 531 F.2d 1303, 1306 (5th Cir.1976).

 Appellants next contend that the record of arrests and indictments in this case falls within an exception to the gener-

al rule of inadmissibility because it reveals Scafidi's bias or motivation to testify falsely in return for favorable treatment on the state indictments pending against him in Mississippi. This court has acknowledged the general rule that while extrinsic evidence of specific conduct is generally not admissible to attack a witness' credibility because it is a collateral issue, "[t]he bias of a witness ... is not a collateral matter and the party examining the witness is not bound by his denial of acts tending to show his bias." *United States v. Diecidue,* 603 F.2d 535, 550 (5th Cir.1979). However, we reject appellants' contention that Scafidi's record of indictments would have been admissible extrinsic evidence of bias. First, the record reflects that only one of the eleven state indictments filed against Scafidi was still pending at the time of trial. Second, appellants ask us to speculate, with no record foundation, that the federal prosecutor had the ability to influence the state toward a favorable disposition of the pending state court indictment. And most importantly, in their post-trial offer of proof, appellants did not offer Scafidi's record of arrests and indictments on a bias theory; their offering was under Rule 608(b) to demonstrate bad character that related to Scafidi's truthfulness.

For the foregoing reasons, we are not persuaded that had Scafidi's record been disclosed to the defense, the result of the trial would have been different.

## VI.

 Appellants received enhanced sentences on the possession counts pursuant to 21 U.S.C. § 841(b)(1)(B) because they were convicted of a drug transaction involving over 500 grams of cocaine. Appellants contend that the government adduced no evidence of the cocaine's weight. But the cocaine was introduced in evidence and submitted to the jury for inspection. The jury was able to observe, hold the cocaine and determine that it weighed more than

---

3. In appellants' post-trial offer of proof, appellants did not demonstrate what either the agents or Scafidi would have testified to about Scafidi's activity that led to his arrests or indictments.

500 grams.[4] Appellants are not entitled to resentencing on the possession count.

AFFIRMED.

---

**4.** For this same reason the district court did not abuse its discretion in denying appellants' motions for new trial which they sought on this same ground.