Filed:  May 16, 2001

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

Nos. 99-4468(L)
(CR-98-399)

United States of America,

Plaintiff - Appellee,

versus

Anthony Causwell,

Defendant - Appellant.

O R D E R

The court amends its opinion filed May 2, 2001, as follows:

On page 4, first full paragraph, line 8 -- the extra "the" in the middle of the line is deleted.

On page 6, first full paragraph, line 2 -- the number and words "(1) there must be" are moved to become the first line of the indented quotation.

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

UNPUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 99-4468

ANTHONY CAUSWELL,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 00-4194

ANTHONY CAUSWELL,
Defendant-Appellant.

Appeals from the United States District Court
for the District of South Carolina, at Florence.
C. Weston Houck, District Judge.
(CR-98-399)

Argued: December 8, 2000

Decided: May 2, 2001

Before WIDENER, LUTTIG, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion. Judge Widener wrote
a concurring opinion.

_____

**COUNSEL**

**ARGUED:** William Thomas Toal, JOHNSON, TOAL & BAT-TISTE, P.A., Columbia, South Carolina, for Appellant. Alfred William Walker Bethea, Assistant United States Attorney, Florence, South Carolina, for Appellee. **ON BRIEF:** J. Rene Josey, United States Attorney, Florence, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant Anthony Causwell was convicted of two counts of possession with intent to distribute and distribution of cocaine base in violation of 21 U.S.C. § 841(a), and one count of conspiracy to possess with intent to distribute and distribution of cocaine base in contravention of 21 U.S.C. § 846. The district court sentenced Causwell to 300 months imprisonment on each count to run concurrently, and a ten-year period of supervised release. For the reasons that follow, we affirm Causwell's convictions and sentence.

I.

Local authorities in Horry County, South Carolina, suspected that Anthony Causwell was dealing drugs. J.A. 167, 236-37. The police arranged a "controlled buy," in which Causwell sold approximately one ounce of crack cocaine to Diana McCarter, a cooperating witness. J.A. 176, 182-83, 220-21.

Later that same day, the police attempted to stop Causwell's 1991 Ford Expedition, the same car in which he delivered the drugs for the "controlled buy." J.A. 308. Rather than yielding to authorities, Causwell abandoned his vehicle and fled on foot. J.A. 247, 368. The offi-

2

cers found large quantities of crack and powder cocaine inside the Expedition. J.A. 247, 309-10.

Several hours later, Causwell was apprehended at a local casino and placed under arrest. J.A. 373. He was then taken to the local "Magistrate's Office" for questioning.[1] J.A. 248, 286. At that time, Causwell agreed to cooperate with police and relate everything he knew. J.A. 288, 290, 299, 303-305, 390-91. Causwell was primarily questioned on his involvement in the sale and distribution of crack and powder cocaine in Horry County. J.A. 330. He admitted that he had been dealing crack cocaine for quite a while, and had brought at least 84 kilograms of cocaine into the county. J.A. 331. He further stated that his source for the cocaine was a man named "Shorty" from Miami, Florida, and that Shorty was on his way to South Carolina to deliver at least two kilograms of cocaine to him. J.A. 331.

Causwell then agreed to place a recorded telephone call to Shorty to discuss the details of the exchange. Agent Cannon, one of the officers present at the interview, testified at trial that the "substance of the conversation" was that an "individual known as Shorty was in route to the South Carolina area, that at the time he was still in Florida, I believe, and he would be arriving the next morning." J.A. 336. Cannon further stated that "according to Mr. Causwell, [Shorty] was bringing cocaine," but Shorty did not state anything other than "he had something, but he didn't say an amount." J.A. 337. Within the next 48 hours, agents arrested Shorty when he attempted to deliver a car battery filled with cocaine to Causwell. J.A. 342.

Due to the interstate nature of the drug conspiracy, local agents turned the case over to the federal government for further investigation and prosecution. Approximately two weeks after his arrest, Causwell and Assistant United States Attorney Alfred Bethea entered into a proffer agreement whereby Causwell promised to provide truthful information regarding his "involvement in the illegal importation and

_____

**1** In his brief, Causwell argued that he did not receive a Miranda warning prior to questioning. At oral argument, however, Causwell's counsel abandoned the argument. As a result, we need not address this issue on appeal. See United States v. Joya-Martinez, 947 F.2d 1141, 1143 (4th Cir. 1991).

trafficking of controlled substances," and the government agreed not to use "statements made by or other information provided by [Causwell] during th[e] proffer or discussion . . . in any criminal or civil case except as provided herein." J.A. 40. The agreement did, however, grant the government the express right to make derivative use of Causwell's statement, including in the pursuit of "any investigatory leads." J.A. 41.

At a joint preliminary hearing for Causwell and Shorty, the sole witness for the prosecution was Joseph Koenig, an agent of the Drug Enforcement Administration who was present during Causwell's proffer. Koenig was asked at the hearing whether he had "any other information . . . to provide to the court at this time." J.A. 54. In response to that broad question, Koenig launched into a lengthy monologue discussing the contents of Causwell's proffer. J.A. 54-55. Specifically, he discussed the business relationship between Causwell and Shorty, including the ordinary procedure for the exchange of drugs between the two. Much of this testimony was cumulative of information that the government already possessed prior to Causwell's proffer. Compare J.A. 51-53 with J.A. 54-55. Causwell did not object to any of the testimony at the time. The magistrate judge concluded, based on Koenig's testimony, that "probable cause ha[d] been established that a crime has been committed and[that Causwell and Shorty] committed that crime." J.A. 70.

Despite Causwell's cooperation with the government, he refused to enter into a plea agreement. He was indicted for two counts of possession with intent to distribute and distribution of cocaine base, and one count of conspiracy to possess with intent to distribute and distribution of cocaine base. J.A. 34-37. Following the indictment, the government filed an information under 21 U.S.C. § 851, notifying Causwell that it intended to seek an enhanced sentence due to his prior convictions for "felony drug offense[s]." District Court Docket No. 213. Causwell did not file a response denying any of the convictions listed in the information.

The jury returned a guilty verdict on all three counts of the indictment. J.A. 761. The district court sentenced Causwell to 300 months on each count to run concurrently, and a ten-year period of supervised

4

release. J.A. 755-57, 762. Causwell filed a timely notice of appeal challenging his convictions and sentence. J.A. 766.

II.

On appeal, Causwell challenges the district court's decision to admit the testimony of Agent Cannon regarding statements made by Shorty during the recorded telephone call from the Magistrate's Office. Specifically, Causwell contends that the conspiracy terminated once he was arrested and that any statements made by Shorty after the arrest are inadmissible hearsay because they are not subject to the co-conspirator exception to the hearsay rule in Fed. R. Evid. 801(d)(2)(E).

Generally, we review a district court's decision to admit a statement under Rule 801(d)(2)(E) for an abuse of discretion. See United States v. Blevins, 960 F.2d 1252, 1255 (4th Cir. 1992). However, where a party fails to "object with that reasonable degree of specificity which would have adequately apprised the trial court of the true basis for his objection . . . and would have clearly stated the specific ground now asserted on appeal," United States v. Parodi, 703 F.2d 768, 783 (4th Cir. 1983) (internal citations omitted), we review the district court's decision for plain error. See Fed. R. Crim. P. 52(b); United States v. Linwood, 142 F.3d 418, 422 (11th Cir. 1998); United States v. Burton, 126 F.3d 666, 671 (5th Cir. 1997).

At trial, Causwell's counsel objected to Cannon's testimony on the ground that it was inadmissible hearsay. Yet, when questioned further by the district court about the nature of his objection, counsel stated only that Shorty was "not a co-conspirator in this indictment." J.A. 333. The district court immediately rejected Causwell's argument because whether Shorty was charged or listed in the indictment as a co-conspirator is not relevant to whether a statement is subject to the co-conspirator exception in Rule 801(d)(2)(E). See, e.g., United States v. Zandi, 769 F.2d 229, 235 (4th Cir. 1985).

On appeal, Causwell now challenges the admission of the statements, not on the ground that there was an omission in the indictment, but rather on the ground that the conspiracy terminated upon Causwell's arrest. The manner in which the government chose to charge

5

and indict Causwell is factually distinct from the question of whether his arrest terminated the conspiracy. Therefore, we review the admission of Cannon's testimony for plain error since Causwell never afforded the district court an opportunity to rule on the objection he now seeks to assert belatedly on appeal. See Parodi, 703 F.2d at 783 (holding that a litigant fails to properly preserve an objection for appellate review when he objects under the correct evidentiary rule, but on a ground different than that asserted on appeal).

Four conditions must be met before a reviewing court may correct plain error under Fed. R. Crim. P. 52(b):

> (1) there must be an error such as deviation from a legal rule; (2) the error must be plain, meaning obvious or, at a minimum, clear under current law; (3) the error must affect substantial rights -- in other words, the error must be so prejudicial as to affect the outcome of the proceedings in the district court; and, finally, (4) the reviewing court must determine if the error "seriously affects the fairness, integrity or public reputation of judicial proceedings."

United States v. Castner, 50 F.3d 1267, 1277 (4th Cir. 1995). We assume, for purposes of this opinion, that the district court erred in admitting Shorty's statements under Rule 801(d)(2)(E). Compare United States v. Pratt, 239 F.3d 640, 644 (4th Cir. 2001) (stating that the admission of statements from a monitored telephone call from one conspirator to another "probably did constitute error" because at the time of the call, the conspirator who agreed to place the call at the behest of the authorities "was most likely no longer a member of the conspiracy"), with United States v. Urrego-Linares, 879 F.2d 1234, 1240 (4th Cir. 1989) (holding that the district court did not abuse its discretion in finding that the conspiracy had not terminated for purposes of Rule 801(d)(2)(E) despite the fact that the defendant had been arrested and had agreed to place a monitored telephone call to his co-conspirator). Nevertheless, we affirm the district court because Causwell has failed to demonstrate that any alleged error below was "so prejudicial as to affect the outcome of the proceedings in the district court."

Causwell argues that he was prejudiced by the admission of Shorty's statements because Cannon testified that "the substance of the

6

conversation" at issue was that Shorty was in route to South Carolina, that he would be arriving sometime early the next morning, and that Shorty had indicated that he had drugs but did not specify an amount. J.A. 336-37. According to Causwell, this testimony established that he was a co-conspirator in the distribution of drugs.

Even if Shorty's statements were hearsay, however, we cannot say that Causwell was prejudiced or that his "substantial rights" were affected, because any erroneously admitted testimony was entirely duplicative of facts already established by admissible evidence. Cf. United States v. Clarke, 2 F.3d 81, 85 (4th Cir. 1993) (holding that the admission of cumulative testimony was harmless); see also United States v. Abadie, 879 F.2d 1260, 1264-65 (5th Cir. 1989) (observing that the admission of hearsay testimony was not prejudicial to the defense where it was "largely cumulative to much more damaging evidence of the same criminal activity"); United States v. Thomas, 879 F.2d 559, 563 n.2 (6th Cir. 1989) (explaining that even if hearsay testimony should have been excluded, "the effect of the statement was clearly harmless because it was merely cumulative testimony"). First, Cannon testified moments earlier that Causwell admitted during his initial interview with police that he had been dealing drugs for quite a while, that Shorty was his source for drugs, and that Shorty was on his way to South Carolina to deliver drugs. Causwell does not dispute that the statements he made to police during the initial interview were admissible as admissions by a party-opponent under Fed. R. Evid. 801(d)(2)(A). Second, an audiotape of the entire conversation between Shorty and Causwell was admitted at trial without objection, and Causwell does not challenge that ruling on appeal. J.A. 340-41.

Accordingly, we conclude that Causwell has failed to demonstrate prejudice.

III.

Causwell also seeks remand for a new trial on the ground that the government breached a proffer agreement in obtaining a conviction. The government used statements made by Causwell pursuant to a proffer agreement -- through the testimony of DEA agent Koenig -- at a preliminary hearing to establish probable cause.[2] Causwell argues

_____

**2** We review for plain error since Causwell did not object to this testimony at the preliminary hearing. See Fed. R. Crim. P. 52(b).

7

that the government was prohibited from using any of his statements made under the proffer agreement against him in "any criminal or civil case." The government's position is that even if the proffer agreement was violated, any error made at the preliminary hearing has no effect on Causwell's subsequent indictment and conviction. We agree.

For, even if we were to assume that the government breached the proffer agreement and that that breach rose to the level of a deprivation of a preliminary hearing, Causwell would not be entitled to a new trial. In Gerstein v. Pugh, 420 U.S. 103 (1975), the Supreme Court stated that though a probable cause hearing is necessary under the Fourth Amendment, "a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause." Id. at 119. Thus, even if Causwell's detention was illegal, "the manner in which a defendant is brought to trial does not affect the ability of the government to try him." Matta-Ballesteros v. Henman, 896 F.2d 255, 260 (7th Cir. 1990) (citing Frisbie v. Collins, 342 U.S. 519, 522 (1952)); see also Gerstein, 420 U.S. at 119 (stating that an "illegal arrest or detention does not void a subsequent conviction").

We are confident, therefore, that if an outright refusal to provide a probable cause hearing does not require us to vacate a conviction, so also the erroneous admission of evidence at such a hearing would not be grounds for "invalidating an otherwise valid conviction." United States v. Daniels, 64 F.3d 311, 314 (7th Cir. 1995); see also Britt v. McKenney, 529 F.2d 44, 46 (1st Cir. 1976) ("The state need not provide such a probable cause hearing before prosecuting on an indictment, and an error at such a hearing would not void a subsequent indictment or conviction."). Therefore, even if the government materially breached the proffer agreement, Causwell is simply not entitled to the relief he seeks.[3]

_____

[3] Causwell also asserts on appeal that the government derivatively used statements he made under the proffer agreement, and that because the government allegedly breached the agreement at the preliminary hearing, it had the burden of proving that it did not make derivative use of the proffer. At the sentencing hearing, the district court reviewed the testi-

8

IV.

Prior to argument, Causwell filed a pro se supplemental brief challenging his sentence under <u>Apprendi</u> v. <u>New Jersey</u>, 120 S. Ct. 2348 (2000). Causwell argues that because drug quantity was neither mentioned in the indictment nor proven as an element of the offense, his sentence violated <u>Apprendi</u> because it exceeded the statutory maximum of 20 years imprisonment set forth in 21 U.S.C. § 841(b)(1)(C). We grant Causwell's motion to file a supplemental brief, and hold that <u>Apprendi</u> is not implicated in this case because Causwell's sentence did not exceed the "prescribed statutory maximum." <u>See United States</u> v. <u>Kinter</u>, 235 F.3d 192, 199-200 (4th Cir. 2000).

"[T]he relevant `maximum' under <u>Apprendi</u> is found on the face of the statute." <u>Id</u>. at 202. In this case, Causwell was convicted of three counts that subjected him to the penalties set forth in 21 U.S.C. § 841(b), and the district court sentenced him to 300 months imprisonment on each count to run concurrently. Even if we assume that Causwell's sentence should be determined by section 841(b)(1)(C) because drug quantity was not charged in the indictment or presented to the jury -- a question we need not and do not decide today -- his sentence still falls below the statutory maximum of section 841(b)(1)(C), which provides that "if any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 30 years."

In this case, the government filed an information pursuant to 21 U.S.C. § 851 listing four state "felony drug offense[s]." District Court

_____

mony at trial and the witness list to determine whether there was any use of Causwell's proffer at trial. The court made factual findings and concluded that there was not "one shred of evidence that any statement of Mr. Causwell, pursuant to the proffer, was used." J.A. 683. Furthermore, on appeal, Causwell again fails to identify any statements or evidence adduced at trial that were violative of the agreement. Because Causwell has failed to meet his burden of proving a breach of the agreement by a preponderance of the evidence, <u>see United States</u> v. <u>Gerant</u>, 995 F.2d 505, 508 (4th Cir. 1993), we affirm on the reasoning of the district court.

Docket No. 213. The listed offenses fulfill the definition of a "felony drug offense" because each was "punishable by imprisonment for more than one year" under South Carolina law. 21 U.S.C. § 802(44). Causwell failed to file a response to the information or in any way deny any of the convictions listed within it. See 21 U.S.C. § 851(c) (requiring a defendant to file a written response if he denies any of the allegations contained in the information). Therefore, even if section 841(b)(1)(C) provided the relevant "maximum," Causwell's sentence does not exceed the maximum and his Apprendi claim fails.

CONCLUSION

For the reasons stated herein, we affirm Causwell's convictions and sentence.**4**

AFFIRMED

WIDENER, Circuit Judge, concurring:

I concur in the result and in much of the reasoning of the majority. I write separately to express my opinion that plain error analysis

_____

**4** Causwell raises several other issues on appeal that are meritless. First, Causwell argues that the district court erred in instructing the jury that either distribution or possession with intent to distribute could support the verdict when the indictment charged him in the conjunctive. Causwell's argument is without merit, however, because where, as here, a statute is worded in the disjunctive, federal pleading requires that an indictment charge in the conjunctive, and it is then proper for the court to instruct the jury in the disjunctive. See Turner v. United States, 396 U.S. 398, 420 (1970); United States v. Champion, 387 F.2d 561, 563 n.6 (4th Cir. 1967). Second, Causwell argues that he did not receive sufficient notice of the obstruction of justice enhancement imposed by the district court. We reject Causwell's contention, however, because the enhancement was included as a sentencing recommendation in the presentence report and Causwell was afforded an opportunity to object and, in fact, did so both in writing and at the sentencing hearing. See United States v. Neal, 180 F.3d 115, 126 (4th Cir. 1999). Finally, we have no jurisdiction to review the degree of downward departure for substantial assistance imposed by the district court. See United States v. Patterson, 38 F.3d 139, 146 (4th Cir. 1994).

10

should not have been applied to the district court's decision to admit Shorty's statements under Federal Rule of Evidence 801.

The majority holds that Causwell failed to preserve his objection regarding the use of Nigel Geohagen's (Shorty's) statements at trial. The record reveals that Causwell immediately objected on hearsay grounds when Agent Cannon referred to a telephone call from Shorty, and the government responded that Shorty was a co-conspirator, which was the position taken by the district court.

Of course, this position was patently erroneous. At the moment Causwell went over to the government, the conspiracy was at an end, and Causwell became an agent of the United States, the same as a narcotics agent. The obviousness of the error is shown in the following colloquy between the defense attorney and the court:

> Mr. Mecham: He's [Shorty's] not a co-conspirator in this indictment.

> The Court: That doesn't make a difference.

So the objection of Mecham was not only correct, even had it been inartfully phrased, it was well within Rule 103 because it was "apparent from the context within which questions were asked." Fed. R. Evid. 103(a)(2). It was at once apparent that a statement of Shorty with respect to Causwell, was inadmissible as hearsay because the conspiracy no longer existed.

That being true, the plain error rule should have no application and the case should have been decided under the standard of harmless error. See Fed. R. Crim. P. 52. With respect to harmless error, among other items of evidence, an Horry County officer testified that a car battery filled with cocaine was delivered from Shorty to Causwell; a South Carolina law enforcement division officer testified that "large quantities" of cocaine and crack cocaine were found inside Causwell's abandoned vehicle; and Causwell admitted to an Horry County officer that he had brought at least 84 kg. of cocaine powder into Horry County. All of this testimony was without contradiction, and I am of opinion the government has borne its burden of proof, show-

11

ing that Causwell's substantial rights were not affected by the admission of Shorty's statements. See <u>United States v. Hastings</u>, 134 F.3d 235, 241 (4th Cir. 1998) (noting the standard in harmless error review is that the government has the burden of proving substantial rights were not affected).

12