## W. E. Bowmer v. The State.

### No. 4583.    Decided March 3, 1909.

**1.—Receiving Stolen Property—Change of Venue—Prejudice—Impartial Trial.**

Where upon trial of receiving stolen property the record on appeal did not show that there existed so great a prejudice against the defendant that he could not get a fair and impartial trial, or that he did not secure same, there was no error in the court's refusal to change the venue.

**2.—Same—Witness Under Rule—Wife of Defendant.**

Upon trial of receiving stolen property there was no error to place the wife of the defendant under the witness rule upon motion of State's counsel; counsel for defendant refusing to say whether he expected to use her as a witness.

**3.—Same—Evidence—Bill of Exceptions.**

Where upon trial for receiving stolen property the bill of exceptions in the record on appeal did not show the pertinency of the proffered testimony on the part of the defense, the same could not be considered.

**4.—Same—Evidence—Bill of Exceptions.**

Where upon appeal the bill of exceptions did not show any relevancy of the rejected testimony, the same could not be considered.

**5.—Same—Evidence—Bill of Exceptions.**

Where upon appeal the bill of exceptions showed that the alleged excluded testimony, to wit, a mortgage, was in fact admitted in evidence, there was no error.

**6.—Same—Evidence—Irrelevant Testimony.**

Where upon appeal the alleged rejected testimony with reference to employment of counsel was utterly irrelevant to any possible issue in the case, there was no error.

7.—Same—Evidence—Bill of Exceptions.

Where upon appeal the bill of exceptions did not show what the witness would have answered, the same could not be considered.

8.—Same—Evidence—Bill of Exceptions.

Where upon appeal the bill of exceptions did not show in itself what was the answer of the witness, or how or in what way it injured appellant, the same could not be considered.

9.—Same—Evidence—Wife of Codefendant—Witness.

Where upon trial of receiving stolen property the records showed that the codefendant was indicted for burglary and theft growing out of the same transaction, and that the prosecution was pending, it was reversible error to permit the wife of said codefendant to testify against defendant; and this although the parties were indicted under different indictments. Following Dill v. State, 1 Texas Crim. App., 278, and other cases.

10—Same—Practice in District Court—Consulting Witnesses Under Rule.

Defendant has a right to be present and to aid his counsel in the examination of witnesses and to speak to the witnesses; and upon trial for receiving stolen property it was error to instruct the defendant's counsel that he must not talk to any witness in the presence of the defendant.

11.—Same—Burglary—Embezzlement.

See opinion of the court for facts that do not suggest the offense of receiving stolen property, but that of embezzlement.

Appeal from the District Court of Martin. Tried below before the Hon. Jas. L. Shepherd.

Appeal from a conviction of receiving stolen property over the value of $50; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Jno. B. Howard* and *Felix G. Thurmond,* for appellant.—On question of change of venue: Randle v. State, 34 Texas Crim. Rep., 43; Meyers v. State, 39 Texas Crim. Rep., 500.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of receiving stolen property over the value of $50, and his punishment assessed at confinement in the penitentiary for a term of two years.

When this case was called for trial appellant presented a motion for change of venue, which motion is embodied in proper bill of exceptions. Attached to the bill of exceptions is the following qualification of the court: "Every attention was given to the testimony of the witnesses while on the stand, their credibility and the weight to be given to the testimony. The facts were to some extent known in Stanton, but Stanton is situated in the extreme southeast part of Martin County. Andrews County had jurors present and from which jurors could be secured. The number of qualified voters in Martin and Andrews Counties is nearly 400. A jury was gotten out of sixty-one men, after a searching examina-

tion, for cause, and after exercising the full number of peremptory challenges. It is safe to say that the. out of town portion of Martin County and the whole of its attached county, Andrews, had no opinion but had simply heard of the case." We do not believe that the court erred in refusing to change the venue in this case. The town of Stanton, where the offense occurred, as stated by the trial judge, is in the southeast corner of the county and jurors were selected from Martin and Andrews Counties, and there is nothing in the bill that suggests to our minds that there existed so great a prejudice against appellant that he could not get a fair and impartial trial or that he did not secure same. We therefore hold that there was no error in the court's refusal to change the venue.

Bill No. 3 shows the district attorney moved the court, just before the taking of the testimony began, to place the wife of the defendant under the rule, if the counsel for the defendant intended to use her as a witness. Counsel for defendant excepted to that remark before the jury, stating that he might want to use her, but did not know whether he would or not; whereupon the defendant's wife was placed under the rule, over the objection of counsel for defendant. There was no error in this ruling.

Bill No. 4 shows the following: "While the witness C. S. Robinson was testifying, on cross-examination, counsel for defense asked witness: 'Then what part of January was it you took this inventory? A. Between the 1st and 9th. Q. How much did this inventory show that you had on hand at the time? State's counsel: We object. That is immaterial and irrelevant. That was January before this burglary was committed in May. I can't see that it is germane to any issue in this case. The court: Is this inventory that you have got now a copy or has it anything to do with the inventory that you took in January? Witness: No, sir. The court: I don't know that I understand the counsel on that. He said January; the invoicing or annual inventory taken by a merchant. Defense: We think we will be able to show—they allege so much stuff being gone here—we will be able to show, we think, that there was very little stuff ordered and that they had sold out of that stock for—from January until May—I think the evidence will further show that he had a partner—the inventory was taken for the purpose of purchasing the interest of his partner at that time and that is the intent of it; and to test his memory some, and to show how much experience he has in the jewelry business. State's counsel: As to whether or not he had a partner in January preceding, I can't see what would be the relevancy at all, and he has not testified as to his prices from that inventory at all, some three months preceding. I can't see its materiality. The court: This inventory you have been talking about was an inventory you made in the clerk's office? Witness: No, not this one. I mean this inventory

here is the one—I mean of the jewelry that I recovered—the last batch of jewelry that I received—in the clerk's office. The court: This is the jewelry you received from Jackson? A. Yes, sir. The court: You then made— A. I made this list in the county clerk's office. The court: In the presence of the clerk? A. Yes, sir. Defense: The theory of the defense is, that we want to show that he did not know what was in there at the time, from this invoice. The court: I sustain the exception."

There is nothing in this bill showing any pertinency of the proffered evidence on the part of the defense. The bill does not show that appellant expected to prove that there was not fifty dollars worth of property stolen, and hence it would be utterly immaterial how much he had on hand the first day of January. The ruling of the court was correct.

Bill No. 5 complains of the same matter as stated in the above bill.

Bill No. 6 shows that while prosecuting witness was testifying appellant propounded this question: "Business was pretty bad along about that time, wasn't it? (Which question had reference to the time that the witness testified that he had notified the defendant he could not continue him on a salary basis, but would continue him on a commission basis.) A. Well, there was not much business of any kind at that time. Q. That is what I say, it was bad; it was not good. You were doing very little business; about how much did you do at that time? State's counsel: We object to what the witness may have owed—or was doing at the time as irrelevant and immaterial. The court: I will rule that out, gentlemen, at the present, I don't see the—. Defense counsel: I have already stated, if your honor please, my object in this. The court: I have ruled it out. I understand. Defense counsel: I think I can state our theory of it. The court: You need not state it before the jury." This bill is also defective and does not show any relevancy of the testimony attempted to be elicited from the witness.

Bill No. 7 complains of the ruling of the court upon similar question to bill No. 6.

Bill No. 8 complains that the court refused to permit appellant to prove that appellant had a mortgage upon the property. The court sustained the objection, but qualifies the bill by saying that the mortgage was afterwards introduced in evidence.

Appellant further complains that the court would not permit him to ask the prosecuting witness the following question: "Did you employ Judge Grisham to assist in the prosecution of this case? A. I just stated that I requested him. The district attorney: Possibly I can relieve the gentleman's mind. Mr. Grisham is going to be the next district attorney and I invited him at the time of this offense, or shortly afterwards, to assist in the prosecution of the case." Appellant then insisted or offered to prove that Judge

Grisham was receiving no compensation. As to whether he received compensation for his services or not is a matter utterly irrelevant to any possible issue in this case.

Bill No. 13 shows the following: While the witness J. E. Jackson was testifying on cross-examination, defense counsel propounded to him the following question: "You tell this jury, Mr. Jackson, that you would give your friend away and voluntarily send him to the penitentiary and take him away from his family and all that for one hundred dollars? District attorney: I object to that. Defense: I just want to show what he would do. The court: I sustain the objection." The bill is defective in not stating what the witness would have answered.

Bill No. 14 shows that while the witness George A. Layne was testifying on direct examination for the State, and while the witness Layne was referring to the time that the witness visited the house of Mrs. J. G. Rupe, when the said Mrs. J. G. Rupe went out of the house and made a certain motion, being watched by the witness, who later went to the certain place where the motion was made and found certain jewelry, the district attorney asked the witness the following question: "What was done? A. Mrs. Rupe went out doors. Defense: We object to what Mrs. Rupe did unless the defendant was by and heard her or saw her. District attorney: Did she take anything with her when she left? Defense: We object to what Mrs. Rupe did after the commission of the offense. What each one of the co-conspirators did, if they were co-conspirators, can not be proven after the commission of the offense—parties to a crime what they did afterwards. The court: Mrs. Rupe was not in the commission of the crime, was she? Defense: I don't know. We were not by her and it is hearsay. And what she did and what she said we are not responsible for. The court: What is your question? District attorney: I just ask him what was done that led him to detect the crime by Mrs. Rupe; if she did anything that pointed it out or indicated where the jewelry was. We expect to trace the jewelry. The court: Go ahead." To which ruling of the court and his action in permitting the said witness Layne to testify as to Mrs. Rupe's actions, motions, etc., defendant objected. This bill is also fatally defective in that it does not show within itself what was the answer of the witness or how or in what way it injured appellant. We will not look to a statement of facts to make out a bill of exceptions.

Bill No. 15 shows that when Mrs. Rupe was called to testify on behalf of the State, States' counsel propounded the following question: "State to the jury whether or not you ever at any time turned over any jewelry to Mr. Bowmer? Defense: Your Honor, I want to object to her testifying. Defense: You are Mrs. Rupe? A. Yes, sir. Q. You are the wife of J. G. Rupe, one of the defendants in these cases? A. Yes, sir. Defense: We object to

her testifying upon the grounds that her husband is a codefendant with this defendant, and his case is still pending against him, and that she would be favorable to him and unfavorable to this defendant, and we object to her testifying in this case; any testimony that she may give upon the grounds that her husband is indicted, a codefendant with this crime; the same transaction—growing out of the same transaction and he is not yet tried and is in jail, and that she is his wife, and if she testifies before his case is disposed of she would be favorable to him and unfavorable to this defendant. The court: That is your ground? Defense: Yes, sir. The objection is overruled." The bill is approved with this qualification: "The bill is approved with this qualification: "That Mrs. Rupe's husband was not a codefendant with Mr. Bowmer. The indictment against Bowmer had two counts, one for theft and one for receiving and concealing stolen property. As soon as the State announced ready it dismissed the first count (theft) against Bowmer and Bowmer was tried on 2d count. Rupe was indicted for burglary and theft." The court erred in admitting this testimony. Where a defendant's wife testifies in a codefendant's case, whether they are indicted in one or different indictmnts, the testimony of the wife is inadmissible in the trial of the codefendant. We hold that the above facts make appellant a codefendant with the husband of Mrs. Rupe. This proposition was laid down in the case of Dill v. State, 1 Texas Crim. App., 278, and Dungan v. State, 39 Texas Crim. Rep., 115, and various other authorities might be cited. It follows, therefore, that the court erred in admitting this testimony.

Bill No. 16 shows that at the close of the State's testimony counsel for defendant requested permission of the court to consult with themselves and their witnesses before proceeding with the defense testimony, whereupon defendant and his counsel retired from the court room. After the retirement as above mentioned the court called a deputy sheriff, and gave him the following instructions: "Defendant's counsel must not talk to any witness in the presence of the defendant nor any witness in the presence of any other witness; nor the defendant in the presence of any other witness, provided they put the defendant upon the stand." This instruction was delivered to defendant's counsel by the court through a deputy sheriff, whereupon appellants excepted to the instruction of the court. There was error in the instruction of the court. Defendant has a right to be present and to aid his counsel in examination of witnesses or talking to witnesses.

The evidence in this case shows that appellant was the clerk of the prosecuting witness. The facts show that the prosecuting witness owned the jewelry store and appellant was clerking for him. The circumstances clearly show, or at least tend to show, that prosecutor either consented to or had knowledge of the burglary of the house. A great deal of the property was subsequently found in

appellant's possession. Without detailing the evidence further, this, as we understand it, is the substance of the testimony. We think that the facts do not suggest receiving stolen property as appellant's offense, but that his offense was that of embezzlement, being the agent and employe of the prosecuting witness.

For the errors pointed out the judgment is reversed and the prosecution ordered dismissed.

*Reversed and remanded.*