**Randle Dwayne MURDOCK, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 6–91–070–CR.**

Court of Appeals of Texas,
Texarkana.

Aug. 4, 1992.

Rehearing Denied Sept. 29, 1992.

Discretionary Review Refused
Feb. 3, 1993.

Dick DeGuerin, Houston, for appellant.

John B. Holmes, Dist. Atty., Houston, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Randle Dwayne Murdock appeals from his conviction on a charge of illegal investment. He was found guilty, and his punishment was assessed at twenty-five years' confinement and a $300,000 fine.

Murdock brings seventeen points of error that can be grouped into six major areas. He contends (1) that he was denied his right of confrontation under the United States and Texas Constitutions and TEX. CODE CRIM.PROC.ANN. arts. 1.05, 1.25 (Vernon 1977) because the trial court erred in failing to suppress audio tapes containing inadmissible hearsay statements by his alleged codefendants and because his cross-examination of a witness was improperly limited; (2) that the trial court committed reversible error by admitting evidence of extraneous offenses; (3) that the trial court

erred by denying his request for evidence in the possession of the State about an offense allegedly committed by the State's witness; (4) that the trial court erroneously admitted evidence seized in violation of his constitutional rights; (5) that the trial court failed to instruct the jury of the permissible conditions of probation that the court could impose; and (6) that he was denied his right to due process of law and a fair trial by the trial court's failure to consider evidence in support of his motion for new trial, failure to set aside a verdict obtained through perjured testimony, and failure to set aside a verdict obtained through prosecutorial misconduct.

The State alleges that Murdock was convicted for providing money for the purchase of cocaine by a conspiracy consisting of Murdock, Rocky Short, Diana Yarcy, and Nadir Shah. The group was infiltrated by Houston Police Department Officer Ybarbo. Officer Ybarbo met with the co-defendants except for Murdock on April 14 and recorded his conversation with them. The transcription of this recording was entered into evidence and is in the record. Murdock was not a participant in any conversation shown by the tape. However, he was discussed at length by the participants in the conversation. After they discovered that Murdock was coming, the undercover officer asked them in what type of car Murdock would come and was told that he would come either in a Porsche or a convertible Mustang. Murdock appeared in his red Mustang convertible along with Khurram Shah (Nadir's cousin), and Nadir Shah pulled up in another vehicle. Khurram Shah carried a red boot containing $14,000 from the car to the alleged co-conspirators' apartment and returned empty-handed. He and Murdock then drove away. They were arrested immediately thereafter. Approximately $1,100 in cash was found in the trunk of his car. Simultaneously, Nadir Shah and the other conspirators were arrested, and the $14,000 was recovered from them. Murdock was tried separately from the other individuals involved, one of whom testified for the State.

We first address Murdock's contention that the trial court committed federal and state constitutional error and state statutory error by admitting the tape recording made by the undercover officer during his conversations with co-conspirators into evidence.

## FEDERAL CONSTITUTIONAL COMPLAINTS

■ Although Murdock does not specify which constitutional right was allegedly violated, we presume from the case authority cited that he is alleging that the admission violated his rights under the Confrontation Clause of the Sixth Amendment of the United States Constitution and Article I, § 10 of the Texas Constitution. The Confrontation Clause of the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." The Supreme Court held in *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), that the requirements for admission under Federal Rule of Evidence 801(d)(2)(E) were identical to the requirements of the Confrontation Clause.[1] The Court held that such a recorded statement by co-conspirators is admissible when the proponent of the statements shows by a preponderance of the evidence (including the recorded statement) that a conspiracy existed. The Court found that the trial judge could consider the offered hearsay statements so that the proponent need not rely solely on independent evidence to show the existence of the conspiracy. In doing this, the Court rejected the argument that such reliance constituted impermissible "bootstrapping."

As pointed out by the Supreme Court in *Bourjaily*, first, an out-of-court statement such as this is presumed unreliable. However, that presumption may be rebutted by appropriate proof. Also, individual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it. It is therefore possible for presumptively inadmissible hearsay testimony such as that in the present case to be found admis-

---

1. Tex.R.Crim.Evid. 801(e)(2)(E) is identical to the cited Federal Rule of Evidence.

sible if the other evidence presented in the case sufficiently corroborates its content. *Bourjaily*, 483 U.S. at 180, 107 S.Ct. at 2781, 97 L.Ed.2d at 155. The other evidence in this case consists of the following:

(1) The undercover officer was told that the money to purchase the cocaine would be brought to a designated apartment complex in a red Mustang convertible.

(2) Murdock and Khurram Shah appeared in a red Mustang convertible in the parking lot of that apartment complex.

(3) Khurram carried a boot containing $14,000 from that car to the apartment of one of the alleged conspirators.

(4) Nadir Shah testified that the money in the boot came from Murdock.

(5) The boot, and the money contained therein, was shown to the undercover officer in and preparation for completing the purchase.

(6) Murdock was arrested in his car shortly after leaving the parking lot of the apartment complex.

The tape contains conversations repeatedly referring to Randy (Randle) as the man providing the money for the purchase, describing his expensive jewelry, and efforts to soothe the jittery undercover officer by assuring him of Randy's ability to make the continuing major drug buys that they were discussing. The tape reflects their surprise that Randy came because the Shahs usually delivered the money. Nadir Shah testified that Murdock was the driving force behind the planned purchase and that he provided the money for the purchase.

The evidence is adequate to meet the preponderance of the evidence standard necessary under the federal test to determine whether a conspiracy existed.

**STATE CONSTITUTIONAL COMPLAINTS AND APPLICATION OF TEXAS RULES OF EVIDENCE**

 Since the Court of Criminal Appeals has held that federal analysis of United States constitutional guarantees is not necessarily applicable to questions of state constitutional guarantees, we must also examine the guarantee provided by Tex. Const. art. I, § 10. *Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App.1991). The Confrontation Clause in the present Texas Constitution provides:

**§ 10. Rights of accused in criminal prosecution**

In all criminal prosecutions the accused ... shall be confronted by the witnesses against him.

As recently discussed by the Court of Criminal Appeals in *Long v. State*, 742 S.W.2d 302, 309 (Tex.Crim.App.1987), *overruled on other grounds, Briggs v. State*, 789 S.W.2d 918, 924 (Tex.Crim.App.1990), confrontation was never considered as an absolute. Its main and essential purpose was to secure for the accused the opportunity for cross-examination. The Court recognized that certain exceptions have always existed in the right to cross-examine one's accusers. Certain types of information are normally considered accurate and valid to the extent that the purpose of cross-examination would not be served by subjecting it to cross-examination. Although the language of Tex.Const. art. I, § 10 and U.S. Const. amend. VI is somewhat different, the guarantees are quite similar because they go to the source of the right of confrontation: English common law.[2] Counsel incorrectly cited two cases during trial as specifically stating that review under the Texas Constitution has not changed since *Bourjaily* was rendered. We have reviewed the cases cited. *Williams v. State*, 790 S.W.2d 643 (Tex.Crim.App.1990), does not discuss this problem at all, and *Sherwood v. State*,

---

**2.** The former law interpreting and applying the provision in the United States Constitution had held that the existence of the conspiracy must be shown by looking only to independent evidence—that is, evidence other than the statement sought to be admitted. *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), *cited by Bourjaily*, 483 U.S. 171, 176, 107 S.Ct. 2775, 2779, 97 L.Ed.2d 144, 153 (1987). These decisions were made prior to the enactment of the Federal Rules of Evidence which were applied by the court in *Bourjaily*.

732 S.W.2d 787, 796 (Tex.App.—Fort Worth 1987, no pet.), was rendered on July 9, 1987, two weeks after the *Bourjaily* opinion. It neither discussed the *Bourjaily* opinion nor acknowledged its existence.

■ Although *Heitman*, 815 S.W.2d 681, allows the courts to apply Texas constitutional guarantees in a broader manner than the federal, we see no reason to do so in this case. The underlying guarantees of the right to cross-examination that were contemplated by the writers of the Texas Constitution have not been unfairly compromised by the admission of this evidence. Hearsay testimony may be admitted if the other evidence presented sufficiently substantiates its content. We have previously reviewed the other evidence presented in this case. That evidence indicates that the tape recording was made in such a manner as to provide it with a level of authenticity and trustworthiness that is adequate to support its admission. Although the right to cross-examination has been limited by so admitting the evidence, the search for truth which underlies the admission of all evidence has not been compromised by its admission.

■ This parallels the analysis used by the United States Supreme Court in its review of the Confrontation Clause and its application through a rule of evidence identical to TEX.R.CRIM.EVID. 801(e)(2)(E).[3] The appellant has not suggested any compelling reason to apply a different standard, nor has he pointed out any noteworthy differences between federal and state constitutions that would require a different result. We find no state constitutional error in the admission of the tape into evidence. Furthermore, Articles 1.05 and 1.25 of the Code of Criminal Procedure do not grant any broader rights of confrontation than the Texas Constitution.

Murdock also suggests that the statements were not made *in the furtherance of the conspiracy* as required by the language of the rule. Some of the statements contained on the tape were not directly related to the conspiracy. However, as previously outlined, most were directed at consummating the purchase of a controlled substance, and the others were necessarily used to show the context for these statements. The trial court did not err by admitting the tapes into evidence.

## LIMITATION OF CROSS–EXAMINATION

■ Murdock next contends that the trial court erred by limiting his examination of Nadir Shah in relation to his arrest immediately before trial on other drug delivery charges.[4] He argues that this limitation deprived him of his right to confrontation as guaranteed by the United States and Texas Constitutions and TEX.CODE CRIM.PROC.ANN. arts. 1.05 and 1.25. In *Hurd v. State*, 725 S.W.2d 249 (Tex.Crim. App.1987), the Court analyzed a case raising these contentions and applied the federal analysis in its review of claimed error both under the United States and Texas Constitutions.[5] We recognize that *Heitman*, 815 S.W.2d 681, allows the courts to apply the Texas guarantees in a broader manner than the United States Constitution. However, we perceive no reason to read the Texas guarantee in a different manner than the United States Constitution in this case. Accordingly, we now review Murdock's contentions under established federal guidelines as applied by Texas courts. The trial court did not permit counsel to question Shah about the latest arrest.

■ Although extrinsic evidence of specific acts of conduct is generally not admissible to attack a witness's response,[6] an

---

**3.** TEX.R.CRIM.EVID. 801(e)(2)(E) reads as follows:
(e) **Statements Which Are Not Hearsay.** A statement is not hearsay if:
(2) *Admission by Party–Opponent.* The statement is offered against a party and is ... (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

**4.** The dissent assumes that Shah committed this act, but there is no proof of that, only that he was arrested.

**5.** U.S. CONST. amend. VI; TEX.CONST. art. I, § 10.

**6.** TEX.R.CRIM.EVID. 608, 609.

exception exists where evidence tends to show a bias or motive for the witness to testify untruthfully. *United States v. Thorn*, 917 F.2d 170 (5th Cir.1990); *Nethery v. State*, 692 S.W.2d 686 (Tex.Crim. App.1985), *cert. denied* 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986). The practice of exposing a witness's motivation to testify against a defendant is a "proper and important function of the constitutionally protected right of cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Hurd v. State*, 725 S.W.2d 249.

■ In *Delaware v. Van Arsdall*, the form of bias was the dismissal of a pending criminal charge against the testifying witness which could have furnished the defendant with a motive for favoring the prosecution in his testimony. In the present case, according to Nadir Shah, no promise of dismissal was made as to Nadir Shah. The prosecutor had told Shah that he would inform the court of his assistance in this case, and presumably the court would look favorably on his cooperation. The Court of Criminal Appeals held in *Miller v. State*, 741 S.W.2d 382 (Tex.Crim.App.1987), *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2835, 100 L.Ed.2d 935 (1988), that it was always proper cross-examination to explore what might motivate a codefendant to testify for the State and against the accused. Thus, evidence that a codefendant who testifies has pending criminal charges or is awaiting sentencing is always admissible against him to show a possible motive for testifying for the State. *Miller*, 741 S.W.2d at 389. In the present case, Murdock and Nadir Shah had been indicted for activities stemming from the same criminal episode and were therefore codefendants. *Bowmer v. State*, 55 Tex.Crim. 416, 116 S.W. 798, 800 (1909).

■ The trial court erred both on Sixth Amendment federal constitutional grounds and state constitutional grounds by refusing to permit counsel to cross-examine Nadir Shah about his latest arrest, and thus preventing Murdock from showing an additional motive that might have induced untruthful testimony.

■ We must reverse the judgment unless we determine beyond a reasonable doubt that the error made no contribution to the conviction or the punishment. TEX. R.APP.P. 81(b)(2). In examining the testimony in the present case, we find that Nadir Shah was cross-examined at length by counsel about his plea of guilty for his portion of the present case, emphasizing that he would not be sentenced until after the Murdock trial. Counsel also questioned Nadir Shah about allegations that charges against his cousin, Khurram Shah, would be dismissed if Nadir Shah testified. Nadir Shah stated that he knew nothing about any such agreement. He also testified that he knew he was going to be deported. Counsel also impeached Nadir Shah by pointing out inconsistencies in his testimony about previously pleading guilty to an offense in 1989, for which he was apparently acquitted. On cross-examination, Nadir Shah also vacillated about the number of times that he had met with prosecutors.

Initially, counsel interrogated this witness about the use of drugs and urged that he was entitled to get into this area to show the witness's ability to observe, recall, and testify. The court informed counsel that he was entitled to go into those matters if he tied his test of memory to the relevant date. On voir dire examination outside the presence of the jury, counsel asked the witness about his arrest at the Lizard Lounge in possession of a vial of cocaine. The witness denied being guilty of the charge for which he was arrested and denied that he had been promised anything in relationship to the arrest.

Nadir Shah had already testified that he was guilty of numerous drug-related offenses, that his sentencing for a felony charge awaited the conclusion of the trial, and that his cousin also had a pending case. He specifically denied having any kind of agreement or promises from the prosecutor for his testimony. The excluded evidence would have shown one other pending charge about which he denied having any agreement with the prosecutor. In the face of all of the other testimony of Nadir

Shah, it is difficult to see how another pending charge on a drug offense and another denial of any agreement with the prosecutor would have altered the opinion of the jurors about this witness. In other words, if the evidence already before the jury had not destroyed his credibility, another pending charge of possession and denial of guilt and an agreement with the State was not likely to have any significant impact. Under these particular circumstances, we determine beyond a reasonable doubt that the trial court's error in refusing to permit counsel to question Nadir Shah about his most recent arrest made no contribution to Murdock's conviction or punishment.

Murdock next argues that the trial court committed reversible error by admitting evidence of extraneous offenses. As previously discussed, the State's witness, Nadir Shah, testified that Murdock was a drug dealer and that Shah had worked for him as a runner. Evidence of "other crimes, wrongs, or acts" is admissible if it has relevance apart from its tendency to prove the character of a person in order to show that he acted in conformity therewith. TEX.R.CRIM.EVID. 404(b). Therefore, a party may introduce such evidence when it logically serves to make more or less probable an elemental fact; when it serves to make more or less probable an evidentiary fact that inferentially leads to an elemental fact; or when it serves to make more or less probable the defense of evidence that undermines an elemental fact. *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim.App.1990).

Appellant argues that the evidence presented is not sufficient to show that Murdock actually participated in any extraneous offense. None of the previous acts to which Shah testified were offenses for which Murdock was either arrested or convicted. Murdock argues that the testimony of an accomplice to any alleged crime is not sufficient to prove that an individual committed an offense. This statement of law is generally correct, *Reed v. State*, 744 S.W.2d 112, 125 (Tex.Crim.App.1988), but is being used here out of context. This rule is a rule of sufficiency when a defendant is on trial for an offense. It is not a rule of admissibility of evidence. TEX.CODE CRIM. PROC.ANN. art. 38.14 (Vernon 1979). Rule 404(b) of the Texas Rules of Criminal Evidence permits evidence of other "crimes, wrongs, or acts" and not convictions or offenses only.

Murdock further argues that this evidence was admitted for the purpose of trying him as a criminal generally rather than under the exceptions further provided by Rule 404(b). Such evidence is made admissible by the exceptions "for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Murdock makes no specific argument under this contention but merely makes a general statement and then continues to the next portion of his argument. The trial court did not state the exception delineated by Rule 404(b) under which Nadir Shah's testimony was admitted. However, the State argued at trial that it was admissible in order to show knowledge and absence of mistake or accident. Murdock's basic defensive contention was that his arrest was merely the result of accidentally being in the wrong place at the wrong time and that he had no knowledge of anything that was going on when Khurram Shah took the money to make the buy.

Murdock further argues in connection with this testimony that it was clearly more inflammatory than probative and that the trial court erred by admitting this prejudicial testimony. *Montgomery*, 810 S.W.2d at 388, specifies that error must be preserved by first making an objection that the proffered evidence amounts to proof of an extraneous offense, and a *further objection* based upon Rule 403 as to relevance versus unfair prejudice. We have reviewed the extended objection raised by counsel at trial. In his initial statement at the bench, he objected to "any questions or answers that would elicit any illegal activity on the part of Randle Murdock prior to the offense in question as being an extraneous offense in violation of Rule 404(b) and in violation of Rule 403." Counsel never

thereafter suggested that the probative value of this evidence was outweighed by its prejudice or any other words to that effect. His entire argument involved his 404(b) objection. The further objection mandated by *Montgomery* was never made. Error has not been adequately preserved for our review.

▬▬▬ Even if the initial objection was adequate to preserve his complaint of relevancy and also to preserve his complaint that its relevancy was nevertheless outweighed by the danger of unfair prejudice, this Court must continue its evaluation under an abuse of discretion standard. So long as the trial court operates within the boundaries of its discretion, this Court should not disturb its decision. *Montgomery*, 810 S.W.2d at 390. The evidence to which Murdock objected was Shah's testimony that he had been employed by Murdock for several months as a runner. He testified that his job was to pick up and deliver drugs. He also testified that Murdock paid him thousands of dollars a week in cash for his activities. The remainder of his testimony involved the offense for which Murdock is tried in the present case and the circumstances surrounding that transaction.

The objected-to testimony was clearly probative because it tends to make more probable the fact that Shah delivered money for Murdock. This evidence inferentially lends support to an elemental fact (that Murdock provided the money with which the drugs were purchased) in contradiction of his apparent argument that he had no knowledge of the transaction. The direct evidence shows that Murdock drove an automobile to a location, that Khurram Shah took money from that automobile to an apartment to purchase drugs and returned to the automobile, whereupon Murdock and Khurram Shah left the area. Nadir Shah's testimony directly contradicts the defensive theory espoused by counsel. In our review, we are required to measure the trial

court's ruling against the relevant criteria by which a decision under Rule 403 is to be made. *Montgomery*, 810 S.W.2d at 392.

Examining the evidence of the prior relationship between Murdock and Nadir Shah lends credence to the State's position that Nadir Shah was Murdock's employee *and not vice versa* and further attacks Murdock's defensive theory that he was completely unaware of such drug-related activities. It does not appear that the danger of unfair prejudice substantially outweighed the probative value of the proffered evidence. Therefore, the trial court did not abuse its discretion by admitting this testimony.

▬▬ Murdock next contends that the trial court committed reversible error by admitting testimony in violation of TEX. CODE CRIM.PROC.ANN. art. 37.07 (Vernon 1981 & Supp.1992) at the punishment stage of trial about unadjudicated offenses allegedly committed by Murdock. The article expressly permits the introduction of any evidence permitted by the Texas Rules of Criminal Evidence that the court deems relevant to sentencing.

There is a split of authority on the determination of this question. The majority of the appellate courts have held that, under the present version of Article 37.07, § 3(a),[7] extraneous, unadjudicated offenses are admissible during the punishment phase. *Brooks v. State*, 822 S.W.2d 765, 769 (Tex. App.–Houston [1st Dist.] 1992); *Holland v. State*, 820 S.W.2d 221 (Tex.App.–Fort Worth 1991, no pet.); *Gallardo v. State*, 809 S.W.2d 540, 541–42 (Tex.App.—San Antonio 1991, pet. granted); *McMillian v. State*, 799 S.W.2d 311, 314 (Tex.App.—Houston [14th Dist.] 1990, pet. granted); *Huggins v. State*, 795 S.W.2d 909, 911 (Tex.App.—Beaumont 1990, pet. ref'd). To date, two courts have held such evidence inadmissible. *Blackwell v. State*, 818 S.W.2d 134 (Tex.App.—Waco 1991, no pet.); *Grunsfeld v. State*, 813 S.W.2d 158 (Tex.

7. Regardless of the plea ... evidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including the prior criminal record of the

defendant, his general reputation and his character.
TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(a) (Vernon 1992).

App.—Dallas 1991, pet. granted). In *Lafayette v. State*, 835 S.W.2d 131 (Tex. App.—Texarkana, 1992) (n.w.h.), this Court joined the majority of the courts in their analysis of the admissibility of this type of evidence. We believe that the statute is now more encompassing than its predecessor and permits, within the trial court's discretion, evidence of specific acts, good or bad, offered through direct testimony of witnesses with personal knowledge subject to cross-examination. Because the current version of Article 37.07, § 3(a) permits the introduction of such evidence, we find no error in its admission. This point of error is overruled.

■ Murdock next contends that the court committed reversible error at the punishment stage by overruling his motion to suppress testimony about evidence allegedly seized in violation of his rights under the Texas and United States Constitutions and admitting testimony about that evidence in violation of TEX.CODE CRIM.PROC. ANN. art. 38.23 (Vernon Supp.1992). The evidence to which he refers was obtained during the search of an automobile during a prior arrest. The officer testified that he had received information from a confidential informant that Murdock had drugs in his possession, that he had pulled alongside Murdock's automobile in his marked police car, and that he had seen him scrambling to hide baggies full of white tablets. He contacted another police officer, and they stopped his car and retrieved the tablets that he had seen Murdock hiding in the glove compartment. These tablets turned out to be Ecstasy (MDMA). As correctly stated by the judge after the tablets were properly identified by the chemist at the punishment phase, these tablets were not controlled substances at the time of the arrest. As pointed out on cross-examination, Murdock was arrested but, since the item was not an illegal substance, the charges were dismissed. The police officer who had arrested Murdock did testify to the contrary, but his misstatement of the law was corrected by the trial judge specifi-

cally and repetitively in a directive addressed to the jury.

Murdock contends that the arrest was obviously pretextual in nature. We disagree. An officer with information that Murdock had unlawful drugs saw him hiding what appeared to be such drugs. Based upon the articulated probable cause, the arrest was lawful.[8] TEX.CODE CRIM. PROC.ANN. art. 14.01 (Vernon 1977). This point of error is overruled.

■ Counsel also argues that testimony about an unconstitutional stop and arrest which resulted in the discovery of a large amount of cash in an ice cooler was improperly admitted. A police officer testified that he was responsible for the February 21, 1989, stop of Murdock. He testified that he had known Murdock prior to the arrest and had discovered the day before the arrest that Murdock did not have a valid driver's license. Accordingly, when he saw Murdock driving his red Mustang, he summoned a marked police car to stop him. After arresting Murdock on this charge, they inventoried the automobile before having it towed away and discovered $40,000 in an ice cooler that was located in the back seat. As long as an actual violation of the law occurs, the police are free to enforce the law and detain a person for that violation, regardless of usual practices and the officers' subjective reason for the detention. *Garcia v. State*, 827 S.W.2d 937 (Tex.Crim.App.1992). A legitimate reason for the traffic stop was articulated.

■ There is no question that a police officer may detain an individual who is driving without a valid license, if for no other reason than to prevent him from continuing to drive unlawfully. *Osban v. State*, 726 S.W.2d 107 (Tex.Crim.App.1986), *overruled on other grounds, Heitman v. State*, 815 S.W.2d 681. Thus, the arrest was valid. An additional point of this analysis involves the subsequent inventory of the car and the discovery of a large amount of cash. Murdock was alone in the car and

---

8. Even if the arrest had been unlawful, this evidence only showed that Murdock possessed tablets that he could legally possess. Murdock

had done nothing unlawful in this transaction, and the judge instructed the jury about this fact.

had no valid drivers license. Murdock was taken into custody, and the car was inventoried prior to being towed away. An arrestee's automobile may be impounded by the police if he has been removed from it and placed under custodial arrest and no other alternative is available to ensure the protection of the vehicle. *Smyth v. State,* 634 S.W.2d 721 (Tex.Crim.App.1982); *Benavides v. State,* 600 S.W.2d 809 (Tex. Crim.App. [Panel Op.] 1980). When an impoundment is lawful, an inventory is legal. *Randall v. State,* 656 S.W.2d 487, 490 (Tex. Crim.App.1983), *citing South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

Federal Constitutional Claims

■■■ The Fourth Amendment to the United States Constitution controls the admissibility of evidence about items discovered during an inventory search. When a vehicle is impounded, local police departments generally follow a routine practice of securing and inventorying the automobile's contents. "These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody; to protect the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger." *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Guillett v. State,* 677 S.W.2d 46, 49, (Tex.Crim.App.1984). The scope of such a search is no broader or narrower than a magistrate could authorize by warrant. *Osban v. State,* 726 S.W.2d at 111.

Murdock's claim of error based upon the Fourth Amendment to the United States Constitution is without merit.

State Constitutional Claims

■■■ Murdock further contends without substantive discussion that TEX.CONST. art. I, § 9 prohibits the admission of testimony about the items discovered during the search. This argument falls squarely within the situation discussed in *Heitman v. State,* 815 S.W.2d 681. In *Heitman,* the Court addressed an inventory search and held that the Texas constitutional guaran-

tees were not necessarily coextensive with the federal guarantees, but then declined to delineate the true boundaries of those guarantees. Article I, § 9 of the Texas Constitution provides:

> The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation.

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The textual similarity between these sections is apparent, as has been specifically recognized since *Crowell v. State,* 147 Tex. Crim. 299, 180 S.W.2d 343, 346 (1944). Although Texas courts unarguably have the power to interpret the Texas Constitution in such a manner as to restrict the power of police to inventory an automobile after impounding it, we perceive no good reason to do so. The reasoning articulated by Justice Rehnquist in *Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 and quoted above, persuasively sets forth the reasons to allow an inventory search to proceed. The ice chest containing the money was lying in the rear seat of a convertible. It was not contained within a locked area not available to the public. No error was shown in the inventorying of the item. Thus, there was no state constitutional bar to the admission of testimony about its contents. These points of error are overruled.

Conditions of Probation

■■■ Murdock next contends the trial court committed reversible error when it failed to instruct the jury properly on *all* the conditions of probation that the court

could impose under Tex.Code Crim.Proc. Ann. art. 42.12 (Vernon Supp.1992). In support of this contention, he cites *Ellis v. State*, 723 S.W.2d 671, 672 (Tex.Crim.App. 1986), for the proposition that all of the conditions of probation listed by the article must be included in the charge. It is arguable that *Ellis* contains this principle. In *Ellis*, the jury charge omitted five of the fourteen total conditions of probation then listed by Article 42.12. The Court held that it was error for those to be omitted. However, it further held that the court erred by stating that the nine possible terms of probation that were listed in the charge were the *only* terms of probation that the court could impose.

However, if *Ellis* ever stood for the proposition that a trial judge was required to include all of the statutory terms of probation in the charge, it has since been overruled *sub silentio*. In *Yarbrough v. State*, 779 S.W.2d 844, 845 (Tex.Crim.App.1989), the Court of Criminal Appeals directly addressed the question of whether the trial court had erred by failing to include in the charge on punishment all of the statutory terms and conditions enumerated by Article 42.12. The Court specifically approved the Dallas court's holding that the trial court did not err by failing to include all of those statutory terms over objection, overruled a Houston case holding to the contrary, and then dismissed the petition for discretionary review as being improvidently granted. *Yarbrough v. State*, 742 S.W.2d 62, 64 (Tex.App.–Dallas 1987), *pet. dism'd, improvidently granted*, 779 S.W.2d 844 (Tex.Crim.App.1989). This point of error is overruled.

Murdock next contends that the trial court committed reversible error in denying his right to due process of law and a fair trial (1) by failing to consider evidence in support of his second motion for new trial, (2) by failing to set aside a verdict obtained through perjured testimony, and, (3) by failing to set aside a verdict obtained through prosecutorial misconduct. This argument revolves around the question of exactly what was promised to Nadir Shah, if anything, in order to obtain his testimony against his co-conspirator, Murdock. Counsel filed a motion for new trial, a first amended motion for new trial, and a second amended motion for new trial. Sentence was imposed on April 2, 1991, after which he filed his first amended *motion for new trial on April 19.[9] The second amended motion was filed on June 7, 1991, after the thirty-day window but within seventy-five days of the judgment. The trial judge refused to consider the second amended motion for new trial because it was not timely filed.[10]

Murdock requested a motion for new trial based upon his discovery that, contrary to his testimony at trial, the State's informant, Nadir Shah, had been promised special treatment and the dismissal of a similar charge against his cousin Khurram Shah in return for his testimony. Murdock argues that the perjured testimony of Nadir Shah and the State's failure to correct this testimony, especially in conjunction with the State's jury argument that emphasized his truthfulness and the lack of any reason to lie, constituted error which should have resulted in a new trial.

Tex.R.App.P. 31 provides that a motion for new trial shall be filed within thirty days of the date sentence is imposed. These rules make no provision for the late filing or amendment of a motion for new trial or motion in arrest of judgment, even with leave of court. *Drew v. State*, 743 S.W.2d 207, 222 (Tex.Crim.App.1987). The right to amend a motion for new trial is

---

9. In Murdock's first amended *motion for new trial*, he listed numerous specific errors that he contends occurred during the course of the trial. However, he in no way either states or implies that the discovery of new evidence or allegations of perjured testimony existed in this case.

10. Rule 31(a)(2) of the Texas Rules of Appellate Procedure allows such a motion to be amended or filed without leave of court within thirty days

of the date sentence was imposed or suspended. Rule 31(c) states that the accused shall *present* his motion for new trial within ten days unless in his discretion "the trial judge permits it to be presented and heard within seventy-five days from after the date sentence is imposed or suspended." The date of presentation and the date of filing are not interchangeable concepts.

purely statutory. The remedy must be pursued in the manner prescribed by statute. The statutory provisions are mandatory and exclusive and must be complied with in all respects, and the court in exercising its particular authority is a court of limited jurisdiction. Where there is no jurisdiction, the power of the court to act is as absent as if it did not exist. *Id.* at 223; *Port v. State*, 798 S.W.2d 839, 847 (Tex.App.–Austin 1990, pet. ref'd). Amended motions that are filed untimely are a nullity and do not provide a basis for appellate review. *Hamilton v. State*, 804 S.W.2d 171, 174 (Tex.App.–Fort Worth 1991, pet. ref'd); *Kiser v. State*, 788 S.W.2d 909, 915 (Tex. App.–Dallas 1990, pet. ref'd). A trial court generally has no discretion to grant leave to amend a motion for new trial after thirty days have elapsed under the rule. *Dugard v. State*, 688 S.W.2d 524, 530 (Tex.Crim. App.1985), *overruled on other grounds, Williams v. State*, 780 S.W.2d 802, 803 (Tex.Cr.App.1989); *Groh v. State*, 725 S.W.2d 282, 285 (Tex.App.–Houston [1st Dist.] 1986, pet. ref'd). Accordingly, Murdock's complaints about the trial court's failure and refusal to consider his second amended motion for new trial have no merit. The trial court correctly refused to consider that motion because it was untimely.

Another exception to the time limitations set out in the rules was articulated prior to the enactment of the Rules of Appellate Procedure in *Whitmore v. State*, 570 S.W.2d 889 (Tex.Crim.App.1976). In analyzing former Article 40.05 of the Texas Code of Criminal Procedure, the Court held that, in some cases when "an accused's constitutional rights are in conflict with a valid procedural rule of law, the procedural rule must yield to the superior constitutional right. Also, in this case, the facts showed good cause for the late filing of the motion for new trial." The Court then went on to note that at no time during the legitimate thirty-day period for filing the motion for new trial was the new evidence available because the individual codefendant involved was unavailable as a witness because he had not yet been tried. The Court also noted that a defendant still had

the right to seek habeas corpus relief thereafter.

The *Whitmore* rule has been most recently described by the Austin court in *Port*, 798 S.W.2d 839, as requiring that the defendant show good cause for any late filing of a motion for new trial at the trial court level. Such good cause presumes that counsel did not waive that constitutional right by failing to pursue it in a timely fashion, i.e., while the motion for new trial could be timely filed. In the present case, there is no such showing. The alleged new evidence involved and the related claim of perjury was fully brought forth at the hearing on motion for new trial by bill of exception, and there is no suggestion that the evidence could not have been obtained from the known witnesses before the expiration of the requisite thirty-day period. Furthermore, Murdock was represented by counsel at all stages of the prosecution.

An exception to this limitation exists when the defendant is not afforded counsel during a critical stage of his prosecution. Good cause is shown when counsel is not appointed to represent an indigent defendant until after it was too late to timely file a motion for new trial. *Callis v. State*, 756 S.W.2d 826 (Tex.App.–Houston [1st Dist.] 1988, no pet.).

In the absence of the showing of such an overriding constitutional right, the trial judge acted correctly by refusing to file or consider the motion. These points of error are overruled.

The judgment of the trial court is affirmed.

BLEIL, Justice, dissenting.

The majority correctly concludes that the trial court erred in denying Murdock's attorney the right to fully cross-examine Nadir Shah, the principal prosecution witness, about his motives to testify against Murdock. The test for harmless error is found in Tex.R.App.P. 81(b)(2). Given the existence of error, the first of three progressive steps is taken; the second step obligates an appellate court to reverse the

judgment; the third obviates the necessity of reversing the judgment only if the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or punishment. *Mallory v. State,* 752 S.W.2d 566, 569, 570 (Tex. Crim.App.1988); *see Norton v. State,* 771 S.W.2d 160, 169 (Tex.App.–Texarkana 1989, pet. ref'd) (Bleil, J., concurring). The trial court's error thus requires reversal unless we determine beyond a reasonable doubt that the error made no contribution to the conviction or punishment.

The State's entire case against Murdock is grounded on the testimony of Shah, an illegal alien from Pakistan who is awaiting deportation. Shah admitted various drug-related offenses and testified that he had picked up and delivered drugs for Murdock in the past. In connection with the offense that Murdock was being tried for, Shah previously had pled guilty to aggravated possession of cocaine and illegal investment and was to be sentenced for those convictions after he testified in this case. This evidence, that Shah was awaiting sentencing, is always admissible to show a possible motive for testifying for the State. *See Miller v. State,* 741 S.W.2d 382, 389 (Tex.Crim.App.1987), *cert. denied,* 486 U.S. 1061, 108 S.Ct. 2835, 100 L.Ed.2d 935 (1988). The trial court allowed this evidence to go to the jury. Another area which may have shown further motive to testify concerned another offense.

A few days before Murdock's trial began, Shah was arrested for delivery of cocaine on March 10, 1991. At this trial, Murdock's attorney wanted to cross-examine Shah about this arrest, the status of those charges and, in connection with those charges, a further interest in giving testimony favorable to the State in this trial. Murdock's attorney argues that he should have been able to elicit reasons why Shah might be motivated to testify for the State or to elicit Shah's denial—which was given in a hearing from which the jury was excluded—that he had any "deal" whatsoever with the prosecution. The latter matter Murdock's attorney refers to is his right to obtain an "incredible denial" from the witness. Thus equipped, Murdock's attorney claims that he would be better able to

portray the witness as a liar before the jury. By our decision, we agree that the trial court erred in not allowing cross-examination of Shah about the drug offense Shah committed just before trial and, as a result, any further motivations for giving testimony favorable to the State.

Shah's credibility and motives to testify in this prosecution are absolutely critical. He is the only witness to connect Murdock with the criminal offense charged. The fact that Shah delivered cocaine on the eve of trial would have indicated that, even though he had been cooperating with the State from 1989 to 1991 concerning Murdock's case, he was not exactly the rehabilitated prosecution witness he might otherwise have appeared to be. This may have raised some additional doubt about his motives to testify (hope for further leniency) and his credibility.

The erroneously denied cross-examination may have been just another chink in the armor of the State's case, or it might have been the fatal flaw, or the coup de grace, which would have tipped the scales in favor of Murdock. In any instance, I cannot conclude, as does the majority, that, beyond a reasonable doubt, this made no difference. I cannot agree with the majority that the trial court's error *beyond a reasonable doubt* made *no* contribution to the conviction or the punishment as required by Tex.R.App.P. 81(b)(2). Therefore, I dissent.